HUGHES v ALMENA TOWNSHIP

Docket No. 279085. Submitted February 3, 2009, at Grand Rapids. Decided May 26, 2009, at 9:00 a.m.

Allan and Sally Hughes petitioned the Van Buren Circuit Court for judicial review of a decision by the Almena Township Zoning Board of Appeals (ZBA) that upheld a denial by the Almena Township Board of Trustees of the Hugheses' preliminary site plan for a planned unit development (PUD). The court, William C. Buhl, J., reversed the decision of the ZBA, reversed the township board's decision to deny the preliminary site plan, and ordered that the preliminary site plan be deemed approved. The township appealed by leave granted.

The Court of Appeals *held*:

1. The provisions of the now-repealed Township Zoning Act (TZA), MCL 125.271 *et seq.*, govern the proceedings in this matter because the statute that repealed the TZA, the Michigan Zoning Enabling Act, MCL 125.3101 *et seq.*, provides that the repeal of the TZA does not alter, limit, void, affect, or abate any pending litigation, administrative proceedings, or appeal that, like this matter, existed on the effective date of the Michigan Zoning Enabling Act. MCL 125.3702(2).

2. The TZA required a circuit court to affirm an agency decision unless it did not comply with the constitution and laws of the state, it was based on improper procedure, it was not supported by competent, material, or substantial evidence on the record, or it did not represent a reasonable exercise of discretion granted by law to the agency. MCL 125.293a(1).

3. The trial court erred by ruling that the township's zoning ordinance's provisions regarding review and approval of a PUD were in direct conflict with the TZA's review and approval process. The ordinances validly place final responsibility for the review and approval of PUDs in the township board pursuant to MCL 125.286c, although preliminary steps take place before the zoning administrator and the planning commission. Because the ordinance designates the township board as the final review body and decision maker, the board must independently determine whether the proposed PUD meets the requirements of the ordinance after

it has received the planning commission's recommendation. The board may require additional evidence from an applicant to ensure that the PUD meets all pertinent legal requirements.

4. The TZA did not prohibit the planning commission from reviewing a proposed PUD and making a recommendation to the township board.

5. The township board was required to hold a public hearing pursuant to MCL 125.286c(5), which it did. The ordinance is not invalid for failing to mention the township board's statutory duty to hold a public hearing. The requirement for such a hearing may be read into the ordinance, which requires the planning commission, but not the board, to hold a public hearing.

6. The township's ordinance validly grants the ZBA the right to hear the appeal in this case in the manner required by the TZA. The ZBA followed proper procedure in reviewing and affirming the township board's decision to deny the PUD application. The circuit court erred by holding that the ZBA failed to follow proper procedure. The ZBA had the same power as the township board to review and obtain evidence not presented to the planning commission and the power to review approval of the PUD application. The ZBA was not limited to the record of the administrative body whose decision it was reviewing. Only the circuit court's review of the ZBA's decision is limited to the evidence of the ZBA's record.

7. The essentials of procedural due process are adequate notice, an opportunity to be heard, and a fair and impartial tribunal. Although the township board denied approval of the preliminary site plan immediately after township trustee Marv Flick stated that the soil maps of the area showed that the area did not drain water well and the Hugheses were not able to present evidence to rebut that information before the board voted, the Hugheses were on notice regarding the potential drainage problems and could have addressed that concern during the public comment sessions before the board and the ZBA, but did not do so. There was no denial of the Hugheses' right to present argument or evidence regarding the issue.

8. The evidence shows that the township afforded the Hugheses a fair and impartial tribunal.

9. The decision of the ZBA was supported by competent, material, and substantial evidence.

10. A local land use agency may properly consider relevant public comments as evidence in considering a proposed PUD.

11. The township board and the ZBA were not authorized to approve the PUD because the township's ordinance requires a

PUD to consist of two or more principal uses and the proposed PUD only contained one principal use.

12. The township ordinance gave the board the authority to deny or table a PUD application if it determined that approval would result in premature development of the area involved. The ZBA's determinations that the proposed PUD did not conform to the township's master plan and the area should not be developed were supported by competent, material, and substantial evidence on the record.

13. Duress occurs in the land use, administrative context when the decision maker is improperly pressured to serve an interest other than that of the voters, taxpayers, members of the general public, justice, and due process. To determine whether there was duress, the question is whether the officer, by reason of a personal interest in the matter, was placed in a situation of temptation to serve his or her own purposes to the prejudice of those for whom the law authorizes the officer to act as a public official. There was no evidence that Trustee Flick had any personal, pecuniary interest in the outcome of the proceedings. Flick was representing the interests of the township and its residents in seeking compliance with the zoning ordinances and did not encourage the members of the ZBA to serve an interest other than that which they were bound to serve. The trial court erred by concluding that Flick's appearances were improper procedure or duress.

14. The trial court erred by ruling that the township was estopped from arguing that the proposed PUD did not meet the ordinance's definition of a PUD. The Hugheses could not justifiably rely on any representations from the zoning administrator or the planning commission that were contrary to the lawfully adopted ordinances. There were no exceptional circumstances that would warrant application of equitable estoppel. The order of the circuit court must be vacated and the case must be remanded to the circuit court for the entry of an order affirming the decision of the ZBA.

Vacated and remanded.

*Schuitmaker, Cooper, Schuitmaker & Cypher, P.C.* (by *M. Brian Knotek*), for Allan and Sally Hughes.

*Kelly L. Page* for Almena Township.

Before: MARKEY, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM. Respondent Almena Township appeals by leave granted the circuit court's June 14, 2007, order that (1) reversed the decision of the Almena Township Zoning Board of Appeals (ZBA) to uphold the denial by the Almena Township Board of Trustees (township board) of petitioners Allan and Sally Hugheses' preliminary site plan for a planned unit development (PUD), (2) reversed the township board's decision to deny petitioners' preliminary site plan, and (3) approved petitioners' preliminary site plan. We vacate the circuit court's order and remand to the circuit court for the entry of an order affirming the ZBA's decision.

## I. SUMMARY OF FACTS AND PROCEEDINGS

On December 23, 2005, the Hugheses submitted a preliminary site plan for a proposed PUD (Charlen Acres) to the Almena Township zoning administrator. Charlen Acres was a 24-unit, single-family residential community on 27.62 acres and included 2.9 acres of permanent open space.

On November 14, 2005, the Almena Township Planning Commission held a pre-application conference pursuant to § 14.04 of the Almena Township Zoning Ordinance, revised May 3, 2004, edition (ordinance). The planning commission determined that the proposed PUD was located in the agricultural-suburban residential (ASR) district.

On December 23, 2005, the Hugheses submitted their formal preliminary site plan application to the zoning administrator as the ordinance required. The zoning administrator, Bruce Dean, reviewed the site plan and determined that the proposed PUD was permitted in the ASR district pursuant to § 14.02(A)(1),[1] but that several

---

[1] Undesignated section references are to the Almena Township Zoning Ordinance.

items needed to be addressed by the Hugheses before approval. Dean then concluded by noting:

> Based on the preliminary nature of the submission and review process, the information related [to] the issues identified above should be provided prior to or at the [planning commission] meeting on 01/09/2006. Though incomplete, the review of the application in its present form, with any additional information provided by the applicant, will allow the applicant to prepare for a submission of a plan for final review pursuant to Section 14.06(C).
>
> Upon a finding that the criteria for site plan and development standards have been satisfied, the planning commission shall set a public hearing for consideration of the final PUD plan.

On January 9, 2006, the planning commission reviewed the Charlen Acres preliminary site plan and concluded that many of the issues Dean raised were addressed in a new site plan drawing the Hugheses distributed at the meeting. Dean noted that the Hugheses still needed to address some issues before the February 13, 2006, public hearing for the site plan. Those issues were also noted in the planning commission's meeting minutes.

On February 2, 2006, the Hugheses submitted a revised drawing, which Dean reviewed. The Hugheses still needed to complete a survey and submit soil profiles supported by soil borings, among other things, for final submission. Dean noted that the "applicant has committed to provide information required to complete the site plan, . . . to obtain final approval."

Almena Township gave notice that the planning commission's scheduled February 13, 2006, meeting would include a public hearing regarding the Hugheses' preliminary site plan. The notice was sent to the owners of 10 parcels situated within 300 feet of the proposed PUD.

On February 13, 2006, the planning commission held a public hearing regarding the Hugheses' preliminary site plan and found that the PUD map was "in compliance with [the] statute for PUD Standards." During the public hearing, eight individuals raised concerns over potential urban sprawl, the need for larger parcels, increased traffic and noise, lack of a buffer zone for neighboring residents, adverse effects on hunting and farming, increased light pollution, possible health and safety issues, destruction of a pond and wetlands, and effects on the existing environment. Township trustee Marv Flick was one of the individuals who spoke during the public comment portion of the public hearing. Flick questioned why the Hugheses had not planned more buffer zones for existing residents. After the public comment period, the planning commission made findings of fact and concluded that certain conditions have to be imposed on the PUD. The planning commission unanimously recommended approving the preliminary site plan with conditions to the township board.

Almena Township published notice that the township board's scheduled March 14, 2006, meeting would include a public hearing regarding the Hugheses' preliminary site plan. This notice was sent to the owners of 14 parcels within 300 feet of the proposed PUD.

At the March 14, 2006, township board meeting, 16 individuals spoke against the proposed PUD, citing inconsistency with the master plan, the failure to meet the ordinance's definition of a PUD, premature development, increase in density, noise, and traffic, safety concerns, high water tables, and environmental concerns. Trustee Flick then moved to deny the application primarily because (1) the soils in the area were not conducive to drainage and the water tables were high, and (2) there were safety concerns regarding ingress

and egress based on the traffic analysis and the road commission's recommendation to deny the site plan. Flick believed that the proposed PUD would constitute "premature development" of the area. The minutes reflected Trustee Flick's reasons:

1. The public input for the most part, if not unanimously, showed enough negative response to section 14.08 (standards of review) to paragraphs F [traffic and safety], G [project's compatibility and interrelationships between mix of unit types, densities, and uses], H [no adverse noise, odor, light or other external effects on surrounding area], and I [minimum disturbance to the environment] . . . .

2. Also paragraph B of Section 14.08 states in part that the proposed PUD shall conform to the intent and purpose of the township zoning ordinance and its regulations and standards of the PUD.

3. This combined with all the good reasoning expressed her [sic, here] this evening should be a substantial reason for denial.

4. The original intent of a PUD was to be able to have two different land uses, which is not the case, not to put as many houses as possible in a small area.

Trustee Wayne Nelson moved to amend Flick's motion, but after much discussion, both motions were withdrawn, and Trustee Nelson moved to adopt the following language:

The Almena Township Board hereby determines that the proposed development of Charlen Acres is inconsistent with the [PUD] section of the township's zoning ordinance, is clearly inconsistent with the township's Master Land Use Plan, and would be a seriously incompatible use of the proposed site due to environmental sensitivities. Therefore, the preliminary site plan for Charlen Acres is denied as a PUD, to be accompanied as supporting information, both the language prepared by Marv Flick and the reasons, along with the standards for review of the zoning ordinance itself, under Section 14.08 and in particular the definition,

of a [PUD], accompanying along with the standards for review in Section 14.08 (B [conformity of a PUD to intent and purpose of ordinance and to other law], F, G, H, and I) and Section 14.10 [authority of township board to deny, table, or approve a PUD] in the Zoning Ordinance pertaining to PUD's, which is what this motion is based upon.

The above language was adopted and the township board unanimously denied the Hugheses' request for preliminary site plan approval.

The Hugheses appealed the township board's decision to the circuit court. The circuit court ruled that the Hugheses had not exhausted their administrative remedies and remanded the case to the ZBA, but retained jurisdiction.

On January 22, 2007, the ZBA held a public hearing to address the Hugheses' appeal. During the main public comment period, two individuals argued that the Hugheses' proposed development did not satisfy the ordinance's requirement that a PUD be comprised of two or more uses: Charlen Acres contained only one. One ZBA member, Ron Marvin, who also was a planning commissioner, mentioned that the conditions the planning commission imposed for approval of the site plan were never satisfied. During its discussion, the ZBA referred to multiple sections of the ordinance and looked at the township's master plan, soil maps, and soil descriptions. The ZBA concluded that: (1) the interrelationships of the PUD were not acceptable; (2) the PUD would adversely affect adjacent and surrounding land; (3) it would adversely disturb the environment; (4) the area was environmentally sensitive and should be protected according to the law; and (5) the soil was poorly suited to septic tank absorption fields and sewage lagoons. Thereafter, the ZBA received further public comment. Three people, including Flick, argued that

the PUD should not be approved because the sump pumps on surrounding properties run constantly. ZBA member Marvin then moved to uphold the township board's decision to deny the Hugheses' preliminary site plan PUD request. The motion was based on "the findings of this meeting today, and the extensive discussion" of several sections of the ordinance, including §§ 14–17, the ordinance's definitions of a PUD and environmentally sensitive area, more specifically on §§ 14.07(B)(1); 16.03(AA)(1); 14.08(A), (B), (G), and (I); 17.04 (A) and (B); 17.07(A)(2) and (3), and (B). The motion was also based on the master plan and the topography map's showing that the area's low elevation was not suitable for drainage. Further, the future land use map showed the area as one of very low density residential. The motion also mentioned another map within the master plan, the soil descriptions, and the maps of soils from the county website. The ZBA unanimously approved the motion.

The Hugheses appealed the ZBA's decision to the circuit court. After hearing oral argument, the circuit court ruled that respondent was estopped from arguing that the proposed development did not meet the definition of a PUD. The circuit court went on to opine that (1) the ordinance "mixes the duties that by statute should be in the Township Board or the Zoning Administrator or the ZBA with what it designates is to be done by the Planning Commission," and (2) Trustee Flick's appearances before the planning commission and the ZBA created the appearance of a less than impartial and open-minded public official who applied improper pressure on board members whose tenure was in the hands of the official. Ultimately, the circuit court concluded that the ordinance required inappropriate and unlawful procedures that

resulted in a material injustice or prejudice to the Hugheses. Specifically, the court determined that the ZBA wrongly conducted a review de novo rather than reviewing the administrative decision of the township board and that this required petitioners to overcome "a double gauntlet in trying to get a preliminary site plan approved." The circuit court reversed the decisions of the ZBA and the township board and ordered that the preliminary site plan be deemed approved.

## II. STANDARD OF REVIEW

Before its repeal by the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*, effective July 1, 2006, MCL 125.3702(1)(c), the Township Zoning Act (TZA), MCL 125.271 *et seq.*, was the basic legislative authority that granted townships the power to pass ordinances concerning zoning. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 99 n 4; 693 NW2d 170 (2005). We note that petitioners submitted their preliminary site plan application for administrative approval and filed their initial appeal in the circuit court before the effective date of the MZEA. Consequently, the TZA governs these proceedings because the MZEA provides that the repeal of the TZA shall not be construed to "alter, limit, void, affect, or abate any pending litigation, administrative proceeding, or appeal that existed on [the effective date of the MZEA]." MCL 125.3702(2).

Under the TZA, a circuit court reviewing a zoning decision had to affirm the agency decision unless it (a) did not comply with the constitution and laws of the state, (b) was based on improper procedure, (c) was not supported by competent, material, and substantial evidence on the record, or (d) did not represent the reasonable exercise of discretion granted by law to the

agency.[2] MCL 125.293a(1); *Pellegrom, supra* at 100; *Reenders v Parker*, 217 Mich App 373, 378; 551 NW2d 474 (1996).

In general, we review de novo a circuit court's decision in an appeal from a ZBA decision, *Norman Corp v East Tawas*, 263 Mich App 194, 198; 687 NW2d 861 (2004), because the interpretation of the pertinent law and its application to the facts at hand present questions of law, *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 408; 761 NW2d 371 (2008). On appeal, the factual findings of the ZBA are to be accorded deference. *Id.*; *Norman Corp, supra* at 198. This Court reviews the circuit court's determination regarding ZBA findings to determine "whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the [ZBA]'s factual findings." *Boyd v Civil Service Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996).[3] This standard regarding the substantial evidence test is the same as the familiar "clearly erroneous" standard. *Id.* A finding is clearly erroneous if the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made. *Id.* at 234-235.

---

[2] The same standard applies under the MZEA. See MCL 125.3606(1).

[3] The *Boyd* Court considered the standard of review applicable to a Civil Service Commission decision, which had already been appealed to the circuit court under MCL 600.631 with respect to whether the agency decision was "supported by competent, material and substantial evidence on the whole record," Const 1963, art 6, § 28. *Boyd, supra* at 232. The *Boyd* Court adopted the reasoning of Professor Don LeDuc from his treatise, Michigan Administrative Law, § 9:49, ch 9, pp 68-69, which approved the reasoning of the Supreme Court in *Universal Camera Corp v Nat'l Labor Relations Bd*, 340 US 474; 71 S Ct 456; 95 L Ed 456 (1951), regarding secondary judicial appeals of administrative decisions. See *Boyd, supra* at 233-234. Because the substantial evidence test under Const 1963, art 6, § 28, is worded nearly identically to that of MCL 125.293a(1)(c), we believe that the reasoning adopted by the *Boyd* Court also applies to appeals of zoning decisions.

The substantial evidence test also encompasses a quantitative component. " 'Substantial evidence' is evidence that a reasonable person would accept as sufficient to support a conclusion. While this requires more than a scintilla of evidence, it may be substantially less than a preponderance." *Dowerk v Oxford Charter Twp*, 233 Mich App 62, 72; 592 NW2d 724 (1998).

### III. ANALYSIS

#### A. THE VALIDITY OF THE ORDINANCE

The circuit court held that the ZBA's decision to uphold the township board's denial of the preliminary site plan was not authorized by law or based on proper procedure because the zoning ordinance's provisions regarding review and approval of a PUD were in direct conflict with the TZA's review and approval process. We disagree.

We review questions of statutory interpretation de novo. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). Ordinances are treated as statutes for the purposes of interpretation and review. *Gora v Ferndale*, 456 Mich 704, 711; 576 NW2d 141 (1998). An ordinance is also clothed with every presumption of validity. *Id.*; *Kropf v Sterling Hts*, 391 Mich 139, 154; 215 NW2d 179 (1974) (citations omitted).

Townships have no inherent powers; they possess only those powers expressly granted them by the Legislature or the Michigan Constitution or "fairly implied" therefrom. *Hess v Cannon Twp*, 265 Mich App 582, 590; 696 NW2d 742 (2005). Const 1963, art 7, § 34, provides: "The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this

constitution and by law shall include those fairly implied and not prohibited by this constitution." In accordance with this constitutional provision, we liberally construe statutes granting power to Michigan townships in the township's favor. *Hess, supra* at 590-591. Moreover, when interpreting statutes we must ascertain and give effect to the intent of the Legislature. *Pellegrom, supra* at 101-102. If the language is clear, we assume that the Legislature intended the plainly expressed meaning, and we enforce it as written. *Id.*; *Brandon Charter Twp v Tippett*, 241 Mich App 417, 422; 616 NW2d 243 (2000). If the language is ambiguous, we apply a reasonable construction that best accomplishes the intent of the Legislature. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

The TZA permitted, but did not require, townships to authorize planned unit developments. MCL 125.286c. If a township authorized PUDs, it had to establish requirements for application, review, and approval, MCL 125.286c(2) to (5), and had to designate the body, board, or official charged with the responsibility of reviewing site plans and granting approval, MCL 125.286e(2). "The review and approval of planned unit developments shall be by the zoning board, an official charged with administration of the ordinance, or the township board." MCL 125.286c(2). The TZA further stated that the "body or official charged in the ordinance with review and approval of planned unit developments shall hold at least 1 public hearing on the request." MCL 125.286c(5). The word "shall" as used in a statute is considered to require mandatory conduct. *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008). In addition, the PUD applicant could have been required to submit a site plan for review. MCL 125.286e(2).

Article 14 of the township's zoning ordinance authorizes planned unit developments and sets forth the application procedures for a PUD. First, the applicant must submit an application with a site plan to the zoning administrator. Section 14.06(A). The zoning administrator, after checking the application for completeness, transmits the application and site plan to the planning commission. Section 14.06(B). The planning commission is required to hold a public hearing on the application and site plan. Section 14.06(C). At the public hearing, the applicant is required to present evidence proving that the PUD adheres to all pertinent standards and requirements. Section 14.06(D). The planning commission may require additional evidence, feasibility studies and analyses, and impact assessments to properly review the PUD application and site plan. Sections 14.05 and 14.06(D).

After the public hearing, the planning commission is required, with the assistance of the zoning administrator, to determine and provide evidence in a report to the township board that the PUD application, site plan, and supplementary materials submitted by the applicant establish that the proposed PUD (1) conforms to the township's master plan, (2) conforms to the intent and purpose of the township's zoning ordinance, and (3) meets the ordinance's PUD regulations and standards, among other things. Section 14.08. This report must recommend either approval, approval with conditions, or denial with reasons, to the township board. Section 14.06(E). After reviewing the application, site plan, and the planning commission's recommendations, the township board must approve, approve with conditions, deny, or table the application and site plan for future consideration. Section 14.06(G). Further, the township board is granted the authority to deny or table an application for approval of a PUD site plan, if the board

concludes, after the planning commission submits its report, that the PUD site plan "will result in premature development of the area involved, or will result in premature or improper scheduling of public improvements such as, but not limited to, roads, utilities, schools, and other facilities." Section 14.10. Until the township board approves the preliminary site plan, it is not binding. Sections 14.06(H) and 20.07(D).

We conclude that the ordinance validly places final responsibility for the review and approval of PUDs in the township board pursuant to MCL 125.286c, although preliminary steps take place before the zoning administrator and the planning commission. The ordinance states that the township board "shall review the application and site plan . . . and shall approve, approve with conditions, deny, or table for future consideration, the application and site plan." Section 14.06(G). The ordinance further states that the planning commission only makes a "recommendation" to the township board, the entity which then takes "final action." Sections 14.06(E) and (G). There is no binding approval of a preliminary site plan until the township board provides it. Sections 14.06(H) and 20.07(D). Thus, while the planning commission conducts a public hearing, reviews the PUD application and its preliminary site plan, and submits a report with recommendations to the township board, the township board has the ultimate authority to review and approve the PUD in accordance with MCL 125.286c. Furthermore, because the ordinance designates the township board as the final review body and decision maker, and the planning commission's report is merely a recommendation, we conclude that the township board must independently determine whether the proposed PUD meets the ordinance requirements. Consequently, we conclude that it is fair to infer that the township board has the same authority as

the planning commission to require additional evidence from the applicant to ensure that the PUD meets all pertinent legal requirements. Const 1963, art 7, § 34.

We also conclude that the ordinance validly grants authority to the planning commission to review the proposed PUD and make recommendations on it to the township board. MCL 125.286c(2) stated that the review and approval of PUDs "shall be" by the zoning board, the zoning administrator, or the township board. But, nothing in the statute precluded assistance in the review process, such as the gathering of information or the making of a recommendation by another body. See, e.g., MCL 125.286c(4)(b) (which required that PUD regulations specify "the participants in the review process") and MCL 125.286c(5) (which provided that the "zoning ordinance may provide for preapplication conferences").

In *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 261-262; 566 NW2d 514 (1997), our Supreme Court reviewed whether a municipal ordinance was preempted by statute. While preemption is not an issue in this case, the Supreme Court concluded that the relevant nuisance abatement statutes did not completely inhibit the municipality from providing other means to abate nuisances and, in doing so, it quoted with approval 56 Am Jur 2d, Municipal Corporations, § 374, pp 408-409: " 'The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirement for all cases to its own prescription.' " (Emphasis omitted.) The test to determine whether a provision of an ordinance conflicts with a statute is " 'whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits.' " *Id.* (em-

phasis omitted.) The Legislature did not, through the TZA, expressly prohibit review by the planning commission of PUD applications ultimately subject to review and approval by the township board. Liberally construing the statute in favor of the township, we believe that the ordinance's designation of the planning commission to review proposed PUDs and make recommendations to the township board to aid it in making its final decision is a fair implication of the statute.

Additionally, the ordinance is not invalid for failing to mention the township board's statutory duty to hold a public hearing. The Legislature is presumed to be aware of all existing statutes when enacting a new statute, *Craig v Detroit Pub Schools Chief Executive Officer*, 265 Mich App 572, 575; 697 NW2d 529 (2005), particularly laws on the same subject, *People v Ventura*, 262 Mich App 370, 376; 686 NW2d 748 (2004). Statutes that are *in pari materia* must be read together as one law and should be reconciled if possible even if they appear to conflict. *McNeil v Charlevoix Co*, 275 Mich App 686, 701; 741 NW2d 27 (2007); *Craig, supra* at 575. Here, the ordinance requires the planning commission, but not the township board, to hold a public hearing. The township board was required to hold a public hearing pursuant to MCL 125.286c(5), which it did in this case. Thus, we read this requirement into the ordinance. See, e.g., *Pletz v Secretary of State*, 125 Mich App 335, 365; 336 NW2d 789 (1983) (reading a search warrant requirement into the administrative inspection section of a lobbying act).

### B. THE PROCEDURES EMPLOYED HERE

We now turn to the question whether the ZBA validly exercised the powers granted to it by the ordinance and by statute. MCL 125.290(1) provided that for "[PUD] decisions, an appeal may be taken to the board of

appeals only if provided for in the zoning ordinance." The ordinance does provide for an appeal to the ZBA. Section 22.07. The TZA also provided:

> The board of appeals may reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination as in its opinion ought to be made in the premises, and to that end shall have all the powers of the officer or body from whom the appeal was taken . . . . [MCL 125.293.]

Section 22.10(G) of the ordinance tracks the language of the statute:

> The [ZBA] shall . . . reverse or affirm wholly or partly, or may modify the order, requirement, decision or determination appealed from, and shall make such order, requirement, decision or determination as, in its opinion, ought to be made in the premise and to that end shall have all the powers of the Zoning Administrator, Township Board and Planning Commission from whom the appeal is taken.

We conclude that the ordinance validly grants the ZBA the right to hear the appeal in the manner required by statute and that the ZBA followed proper procedure in reviewing and affirming the township board's decision to deny the Charlen Acres proposal. For that reason, the Hugheses' argument and the circuit court's holding that the ZBA failed to follow proper procedure by not limiting itself to the record is incorrect.[4]

MCL 125.293 provided that the ZBA had "all the powers of the officer or body from whom the appeal was taken . . . ." The township board in this case had the power to review and obtain evidence not presented to the planning commission and the power to review

---

[4] Although the ZBA stated that it was limiting itself to the record, because of our resolution of this issue, we find it unnecessary to determine whether the ZBA actually did so.

approval of the PUD application. Thus, according to the TZA and Almena Township's ordinance, the ZBA had those same powers. The ZBA is not limited to the record of the administrative body whose decision it is reviewing. Only the circuit court's review of the ZBA's decision was limited to the evidence on the ZBA's record. MCL 125.293a(1) stated that the "decision of the board of appeals rendered pursuant to [MCL 125.293] shall be final" and "[u]pon appeal, the circuit court shall review the record and decision of the board of appeals to insure that the decision: . . . (c) [i]s supported by competent, material, and substantial evidence on the record." When the Legislature employed language stating that the administrative appellate body's fact-finding is final and subject to limited judicial review, it was making it clear that judicial review of the administrative appellate body's decision is to be of the findings of fact made by the administrative appellate body and not the findings of fact made by the administrative agency. See *Holden v Ford Motor Co*, 439 Mich 257, 263; 484 NW2d 227 (1992).[5] The Legislature knows the difference between judicial and administrative appellate review. See *id.* at 267. If the Legislature wanted to limit the ZBA's review of a township board decision to the township board's record, it would have done so. *Id.*

### C. DUE PROCESS

The Hugheses assert that their rights to due process were violated even if the ordinance is valid; therefore, the circuit court's order approving the PUD should be affirmed. We disagree.

---

[5] *Holden* was implicitly overruled in *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507; 563 NW2d 214 (1997), but the Court subsequently expressly overruled *Goff* and reaffirmed *Holden*. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 697; 614 NW2d 607 (2000).

The essentials of procedural due process are adequate notice, an opportunity to be heard, and a fair and impartial tribunal. *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995); MCL 125.293a(1)(a) to (c). "Administrative procedures must provide the affected party an opportunity to explain its position and rebut adverse evidence." *Westland Convalescent Ctr v Blue Cross & Blue Shield of Michigan*, 414 Mich 247, 272; 324 NW2d 851 (1982) (opinion by FITZGERALD, J.). "The critical element provided by a judicial trial or an administrative hearing is the opportunity for a party to present arguments and evidence in support of its position before a decision is rendered, the chance to respond before final action is taken." *Id.* at 268.

During the township board's meeting and after receiving limited public comment, the board held a discussion. Trustee Flick stated he had "pulled the soil charts for this area, on-line, finding that none [of the soils were] condusive [sic] to drainage, and high water tables are in place." Immediately after the discussion, the board unanimously passed a motion denying the request for preliminary site plan approval. "The board did not allow open public comment" until after it had already denied the request. Therefore, there was no window of opportunity within which the Hugheses could have presented evidence specifically rebutting the soil maps and descriptions before the township board reached its decision. The Hugheses were also not afforded the opportunity to present evidence rebutting the soil maps and descriptions at the ZBA level. Although additional evidence could have been submitted to the ZBA before the ZBA made its decision, the ZBA stated that it was limiting itself to the record of the township board. Nevertheless, we conclude that the

Hugheses' were not denied their right to due process even if they lacked an opportunity to specifically rebut the soil evidence.

The parties were aware of the high water tables and drainage issues at the proposed development site, and there was other evidence of these problems besides the soil maps and descriptions. Because the Hugheses were on notice that high water tables were an issue, they could have addressed that concern during the public comment sessions before both the township board and the ZBA. They did not do so. Consequently, there was no denial of the Hugheses' right to present argument or evidence regarding the issue of high water tables.

Further, Almena Township afforded the Hugheses a fair and impartial tribunal. "[T]he right to a hearing before an unbiased and impartial decisionmaker is a basic requirement of due process." *Livonia v Dep't of Social Services*, 423 Mich 466, 508; 378 NW2d 402 (1985). Actual bias need not be shown "[i]f the situation is one in which 'experience teaches that the probability of actual bias on the part of a decisionmaker is too high to be constitutionally tolerable.' " *Id.* at 509, quoting *Withrow v Larkin*, 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712 (1975). For example, the following situations present that risk: (1) the decision maker has a pecuniary interest in the outcome; (2) the decision maker has been the target of personal abuse or criticism from the party before the decision maker; (3) the decision maker is enmeshed in other matters involving the petitioner; and (4) the decision maker might have prejudged the case because of prior participation as an accuser, investigator, fact-finder, or initial decision maker. See *Crampton v Dep't of State*, 395 Mich 347, 351; 235 NW2d 352 (1975). The Hugheses do not allege any of these situations here. Instead, they argue that the

township board was partial because (1) notice of the township board's public hearing was sent out to 14 parcels and their property owners, whereas the notice of the planning commission's public hearing was only sent to 10 parcels and their property owners, and (2) the township board's meeting was advertised as a public hearing but was conducted as a regular meeting.

MCL 125.286c(5) provided that the "body or official charged in the ordinance with review and approval of [PUDs] shall hold at least 1 public hearing on the request." It further stated that "[n]otification of the public hearing shall be given in the same manner as required by section 16b(3) [MCL 125.286b(3)] for public hearings on special land uses." The referenced statute referred to "subsection (2)," which required notice be given "to the owners of property for which approval is being considered, to all persons to whom real property is assessed within 300 feet of the boundary of the property in question, and to the occupants of all structures within 300 feet." MCL 125.286b(2).

No evidence was ever adduced regarding why the number of parcels and property owners increased from 10 to 14 between the planning commission's public hearing and the township board's hearing. Any assumption regarding why the number of parcels and property owners increased would be pure speculation, and this Court's decision must be based only on established facts. *Michigan Aero Club v Shelley*, 283 Mich 401, 412; 278 NW 121 (1938); *Stockler v Dep't of Treasury*, 75 Mich App 640, 645; 255 NW2d 718 (1977). Further, the Hugheses offer no information or authority to support how a public hearing is to be conducted versus how a regular meeting is to be conducted. This Court will not search for authority to sustain or reject a party's position. *Spires v Bergman*, 276 Mich App 432, 444; 741

NW2d 523 (2007). The failure to cite sufficient authority results in the abandonment of an issue on appeal. *Id.* And the record fails to support the conclusion that the township board was biased or partial.

In addition, there is no support on the record to show that the township board prejudged the PUD application. Those serving as adjudicators are presumed to act with honesty and integrity in the absence of evidence showing that the circumstances pose "such a risk of actual bias or prejudgment that the practice must be forbidden . . . ." *Withrow, supra* at 47. We find no authority to support finding that the circumstances of this case constitute an intolerably high risk of bias. *Crampton, supra* at 351.

### D. COMPETENT, MATERIAL, AND SUBSTANTIAL EVIDENCE

We conclude that the ZBA's decision was supported by competent, material, and substantial evidence on the record.[6] MCL 125.293a(1)(c). A court must defer to the administrative agency's findings of fact, *Great Lakes Society, supra* at 408, and, when there is substantial evidence, may not substitute its discretion for that of the administrative agency, *Black v Dep't of Social Services,* 195 Mich App 27, 30; 489 NW2d 493 (1992). The court should not "set aside findings merely because alternative findings also could have been supported by substantial evidence on the record." *In re Payne,* 444 Mich 679, 692; 514 NW2d 121 (1994) (opinion by BOYLE, J.).

To enable review, the board of zoning appeals must specify the factual findings underlying its decision.

---

[6] *Great Lakes Society, supra* at 408. The circuit court did not reach this issue, basing its decision on other grounds. We address it because it presents a question of law and the facts necessary for its resolution have been presented. *Pro-Staffers, Inc v Premier Mfg Support Services, Inc,* 252 Mich App 318, 324; 651 NW2d 811 (2002).

*Reenders, supra* at 378-379. A local land use agency may properly consider relevant public comments as evidence. *Davenport v Grosse Pointe Farms Bd of Zoning Appeals*, 210 Mich App 400, 407; 534 NW2d 143 (1995). If it were otherwise, the TZA's public hearing and notice requirements regarding a proposed PUD would be defeated. *A & B Enterprises v Madison Twp*, 197 Mich App 160, 164; 494 NW2d 761 (1992).

The ZBA found that Charlen Acres did not meet the definition of a PUD. The ordinance confers on the ZBA the authority to interpret its terms. Section 22.07; See, also, *Szluha v Avon Charter Twp*, 128 Mich App 402, 406-407; 340 NW2d 105 (1983), and MCL 125.290. The ordinance defines "planned unit development" as a "planned residential, commercial, industrial, public or semi-public land use development *consisting of two or more principal uses* located on a parcel of land . . . and approved by the Township after a site plan review . . . ." (Emphasis added.) The ZBA interpreted the ordinance to require two or more principal uses based on the ordinance's clear definition of a PUD. It is undisputed that the PUD site plan only contained one principal use, single-family residential. Given the ordinance's plain definition of a PUD, there was no authority by which the township board or the ZBA could approve the PUD.

The ordinance's standards for reviewing a PUD provide in § 14.08(G) that the mix of housing unit types and densities and the mix of residential and nonresidential areas have acceptable interrelationships. Dale Sweet, a farmer who owns the parcel east of the site, spoke in opposition to the development at the planning commission's public hearing because the development would adversely affect his farming and hunting land. Bob Gaudio, who owns the property north of the site, also expressed concern about hunting on his land being

affected by the development. The Department of Environmental Quality (DEQ) characterized the area of the site as "wooded wetlands . . . meaning that the water table at any given time is just below the surface or lower." The Almena Township master plan labels the area in which the site is located as "an extensive river and creek wetland and floodplain network." On the basis of ample evidence in the record, the ZBA concluded that the interrelationships between the proposed PUD and adjacent uses and between the proposed PUD and the site's environment were unacceptable.

The ZBA also concluded that the area should not be developed. Section 14.10 of the ordinance states that the township board shall have the authority to deny or table an application for approval of a PUD site plan if the PUD site plan will result in premature development of the area involved. The ZBA found that the PUD site satisfied the definition of an environmentally sensitive area under the ordinance on the basis of site designations set forth in the township's master plan maps, soil maps, and soil descriptions. The maps within the master plan showed that the PUD was in an area "in the lowest area of this very wet township," which area cuts through and is a part of one of the township's main waterways, and the property is part of the extensive river and creek wetland and flood plain network. Soil maps and soil descriptions posted on the county website supported the ZBA's finding that the site is poorly suited to septic tank absorption fields and sewage lagoons. The fact that the DEQ characterized the area as "wooded wetlands," meaning that the water table was at any given time just below the surface or lower, and the comments made by property owners who own land adjacent to the proposed development site that their sump pumps run constantly, further supported the ZBA's determination that the site should not be

developed. Public comment before the township board also supported this finding. Thus, the ZBA's determination that the area should not be developed was supported by competent, material, and substantial evidence on the record.

The ZBA additionally found that Charlen Acres was inconsistent with the township's master plan. Section 14.08(A) requires the proposed PUD to conform to the township master plan. The ZBA noted that the future land use map within the master plan labels this proposed development site as "very low density"—as opposed to medium and low density. The ZBA also noted that the land use policy in the master plan defines "low density as 10-20 units per 40 acres." Thus, "very low density" consists of 9 or fewer units per 40 acres (1 unit for about every 4.44 acres). The proposed development would contain 24 units on 27.62 acres (1 unit for about every 1.15 acres). Therefore, Charlen Acres was almost four times denser than the density contemplated in a "low density area." This fact also supported the ZBA's finding that the proposed development was inconsistent with the master plan.

The soil maps and soil descriptions, the public comments by township residents stating that the area is very low and that their sump pumps run constantly, and the township's master plan constituted substantial evidence supporting the ZBA's findings that the site's environment and its soils were not suitable for the proposed PUD.

### E. TRUSTEE FLICK

On appeal, Almena Township argues that the circuit court erred in ruling that Trustee Flick's appearances constituted duress. The Hugheses argue that the circuit court did not hold that Flick's conduct constituted

duress as a matter of law, but rather concluded that
Flick's conduct was a procedural defect that, when
considered with all the other procedural defects in this
case, denied the Hugheses their right to due process.
During oral argument before the circuit court, however,
the Hugheses argued that Flick's appearances consti-
tuted duress. While the circuit court's ruling on this
issue was vague, the court's comments that Trustee
Flick's appearance before the planning commission and
the ZBA "renders the appearance of improper pressure
being placed on board members whose tenure may be at
the hands of that elect [sic, elected] official" embodies
the concept of duress in the context of land use planning
decisions.

Duress occurs in the land use, administrative context
when the decision maker is improperly pressured to
serve an interest other than that of " 'the voters,
taxpayers, members of the general public, justice, and
due process.' " *Abrahamson v Wendell (On Rehearing)*,
76 Mich App 278, 281; 256 NW2d 613 (1977), quoting
*Barkey v Nick*, 11 Mich App 381, 385; 161 NW2d 445
(1968). To determine whether there was duress, " 'the
question is whether the officer, by reason of a personal
interest in the matter, is placed in a situation of
temptation to serve his own purposes to the prejudice of
those for whom the law authorizes him to act as a public
official.' " *Dep't of Transportation v Kochville Twp*, 261
Mich App 399, 404; 682 NW2d 553 (2004), quoting
*Aldom v Borough of Roseland*, 42 NJ Super 495, 502;
127 A2d 190 (1956). In *Kochville Twp*, the township
supervisor, while the ZBA was considering several vari-
ance requests regarding setbacks of signs and buildings,
expressed his view that the variances should not be
granted because they would increase the nonconformi-
ties legally existing. *Kochville Twp, supra* at 401. The
supervisor also stated that if the ZBA granted the

variances, those variances would remain with the property forever, so subsequent owners could continue the nonconformities. *Id*. This Court held that even though the township supervisor was a member of the township board that had powers of appointment over the ZBA, his appearances did not constitute duress because he did not have a personal, pecuniary interest in the outcome of the proceedings. *Id*. at 404-405. In the instant case, there was no evidence that Trustee Flick had any personal, pecuniary interest in the outcome of the proceedings. By raising, at the meeting before the planning commission, the necessity to buffer current residents and by explaining that "one of the biggest reasons for denial by the township board of this PUD, in [Flick's] opinion, is the water run-off of the road which would drain back to the pond and adjoining neighbors properties," Flick was representing the interests of the township and its residents in seeking compliance with the zoning ordinance. See §§ 14.08(D) and (G) to (I), 17.01, 17.04, 17.07. Trustee Flick "did not encourage the [ZBA] members to serve an interest other than that which they were bound to serve." *Kochville Twp, supra* at 405.

Moreover, the circuit court erred by relying on *Pollard v Berrien Circuit Judge*, 42 Mich App 308; 201 NW2d 646 (1972), and *Wayne Co Prosecutor v Recorder's Court Judge*, 66 Mich App 315; 239 NW2d 185 (1975), to conclude that Trustee Flick's appearances were improper. These cases are inapposite. Flick did not initiate a cause of action or an appeal, nor was he challenging the decision of an entity with jurisdiction superior to that of the township board. Instead, he merely expressed why he did not believe the proposed PUD complied with the requirements of the zoning ordinance. Flick's appearances did not inject bias into the planning commission's recommendations or the

ZBA's decisions regarding the PUD, and the circuit court erred by ruling that the appearances constituted improper procedure or duress.

### F. ESTOPPEL

Finally, we hold that the circuit court erred by ruling that Almena Township was estopped from arguing that Charlen Acres did not meet the ordinance's definition of a PUD. An equitable estoppel arises where (1) a party by representation, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on this belief, and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts. *Howard Twp Bd of Trustees v Waldo*, 168 Mich App 565, 575; 425 NW2d 180 (1988). Zoning authorities will not be estopped from enforcing their ordinances absent exceptional circumstances. *Id.* Casual private advice or assurance of success from township officials does not constitute exceptional circumstances. *Id.* at 576. Further, everyone dealing with a municipality and its agents is charged with knowledge of the restrictive provisions of lawfully adopted ordinances. *Fass v Highland Park*, 326 Mich 19, 30-31; 39 NW2d 336 (1949).

The Almena Township Zoning Ordinance defines a PUD as consisting of two or more principal uses and provides that the township board must approve a PUD application and site plan. The Hugheses, therefore, could not justifiably rely on any representations from the zoning administrator or the planning commission. The planning commission could only recommend the township board approve or deny the PUD. The township board denied the proposal, as it had the authority to do. Even assuming arguendo that the Hugheses justifiably relied on the planning commission's recom-

mendation of approval, the record does not demonstrate that there were exceptional circumstances, such as receiving a permit and making significant expenditures in reliance on it, warranting the application of equitable estoppel. See *Pittsfield Twp v Malcolm*, 375 Mich 135, 147-148; 134 NW2d 166 (1965). The elements of equitable estoppel or exceptional circumstances are not present, and the circuit court erred in estopping the township from asserting that the ordinance's definition of a PUD required it to deny the PUD site plan.

### IV. CONCLUSION

Because we vacate the circuit court's opinion for the reasons stated above and reinstate the ZBA's decision, we need not address Almena Township's arguments that the circuit court lacked authority to enter an order deeming petitioners' preliminary site plan as approved. For the same reason, we decline to address whether the circuit court's failure to require the parties to file briefs resulted in error requiring reversal.

We vacate the circuit court's order and remand for entry of an order affirming the decision of the ZBA. We do not retain jurisdiction. As the prevailing party, respondent-appellant may tax costs pursuant to MCR 7.219.