*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NSC WALKER, LLC,

Plaintiff-Appellant,

v

CITY OF WALKER,

Defendant-Appellee.

UNPUBLISHED
December 15, 2022

No. 358403
Kent Circuit Court
LC No. 21-002833-AA

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

Plaintiff, NSC Walker, LLC (NSC), appeals by right the circuit court's opinion and order affirming a decision that was rendered in favor of defendant, City of Walker (the city), by the city's Zoning Board of Appeals (ZBA). The circuit court concluded that the ZBA's decision precluding a certain use of NSC's property was consistent with the city's zoning ordinance and a site-plan-approval condition. We reverse and remand for further proceedings.

## I. BACKGROUND

The real property at issue in this case is located in a C-1 local commercial zoning district. In 2017, when the property was owned by Everkept Storage, Inc. (Everkept), the ZBA had approved the property for use as an indoor self-storage facility.. Although an indoor self-storage operation did not constitute an express permitted principal use for a C-1 zoning district, the ZBA found that it was sufficiently similar to such a use and compatible with the intent of the zoning district. The pertinent ordinance section relied on by the ZBA to allow Everkept to operate an indoor self-storage business was Walker Ordinance, § 94-176(b), which provides:

Principal uses. Except as expressly otherwise permitted by this chapter, no building or part of a building in the "C-1" district, local commercial, shall be used, erected, altered or converted or land used, in whole or in part, except for:

(1) Food stores, grocery stores, meat markets, bakeries, coffee shops, delicatessens and restaurants.

-1-

[This ordinance subsection goes on at some length specifically identifying a variety of businesses which do not expressly include indoor self-storage.]

* * *

(18)     Other retail business or service uses determined by the board of zoning appeals to be *similar to the permitted principal uses in this zoning district* and compatible with the intent of the zoning district. . . . . [Emphasis added.]

The ZBA's decision under Walker Ordinance, § 94-176(b)(18) to authorize Everkept's planned indoor self-storage operation was subject to a site-plan review by the city's planning commission. The planning commission subsequently granted approval of Everkept's business subject to, in pertinent part, a condition that there could be "[n]o long-term trailer parking or storage, long-term vehicle parking or storage, or outdoor storage of any material." Everkept accepted the condition, along with other conditions, so it was allowed to operate its indoor self-storage facility. In 2018, while Everkept still owned the property, the city amended its zoning ordinance to add indoor self-storage[1] as a "special exception" use within the C-1 district permissible upon review and approval by the planning commission. Walker Ordinance, § 94-176(d).

In 2020, Everkept sold the property to NSC, which continued to operate an indoor self-storage facility, but with an additional service or feature made available to its customers and others in the form of U-Haul trucks and trailers that could be rented and that were shuttled back and forth from the property on an as-needed basis. The circuit court provided the following description:

NSC purchased the property in 2020. Shortly after, the City received complaints that the property was being used as a location to rent U-Haul moving trucks and trailers. This was being done through U-Haul's "equipment shunting" system. Under this system, the property is used as a pick-up and drop-off point for the trucks and trailers. According to the record, at any given time there would typically be three or four trucks and trailers on the property which are either reserved for rental or returned and waiting for pick-up by U-Haul. NSC claims that 75% of the U-Haul customers are also customers of the self-storage.

Following multiple citizen complaints, the city's code enforcement specialist sent a violation notice and order to abate to NSC. The notice and order indicated that the local ordinance did not permit "the use of a rental truck business (U-Haul) or the open storage of commercial vehicles" on the property. NSC lodged a challenge of the notice and order with the city's ZBA. NSC argued, in part, that running the U-Haul business in connection with the indoor self-storage facility constitutes a permitted accessory use under Walker Ordinance, § 94-176(c). This provision states that "[a]ny use customarily incidental to the *permitted principal uses* in the 'C-1' district

---

[1] The actual language employed by the ordinance section is "self-storage: interior-access." Walker Ordinance, § 94-176(d)(5).

-2-

shall be a permitted accessory use." Walker Ordinance, § 94-176(c) (emphasis added). After a public meeting, the ZBA determined as follows:

1.  A truck rental use is not customarily incidental or accessory to a self-storage use.

2.  Truck rental and open outdoor storage of vehicles, trucks or trailers are uses that are not permitted by right or by special exception in the C-1, Local Commercial zoning district.

3.  A property owner does not have the right to commence an activity or use that is customarily accessory to a special exception principal use without prior Planning Commission approval.

4.  A truck rental operation as a principal OR accessory use is one that could be reasonably judged similar to uses permitted by right or by special exception in the C-4, Outdoor Commercial zoning district.

5.  The long-term outdoor storage of vehicles on the subject site is specifically prohibited per the conditional site plan approval granted by the Planning Commission on April 5, 2017.

6.  Truck rental is not a use that is consistent with the 2020 Walker Master Plan and the future land use and community character designations of the Northwest Neighborhood.

On appeal by NSC, the circuit court affirmed the ZBA's findings and determinations. The court ruled that because indoor self-storage was not a *permitted principal use* in a C-1 district but only judged to be *similar* to a permitted principal use, Walker Ordinance, § 94-176(b)(18), the U-Haul component of NSC's business could not qualify as an "accessory use" as a matter of law under Walker Ordinance, § 94-176(c).[2] The circuit court further ruled that even if those Walker Ordinance sections were construed contrary to their plain language, NSC would still not be entitled to relief because the U-Haul operation violated the site-plan-approval condition barring "long-term trailer parking or storage, long-term vehicle parking or storage, or outdoor storage of any material." The circuit court explained:

There was ample evidence for the ZBA's finding that the renting of U-Hauls breached this condition. NSC was doing repeated "short-term" rental of trucks and

---

[2] Because of the circuit court's ruling, it expressly found it unnecessary to make a determination whether operating the U-Haul aspect of NSC's business is "customarily incidental" to running the indoor self-storage business such that the U-Haul operation qualifies as an "accessory use" under Walker Ordinance, § 94-176(c). As indicated earlier, the ZBA found that the U-Haul operation was not customarily incidental to NSC's indoor self-storage business; therefore, the accessory-use provision was unavailable to NSC.

trailers in such a way that the storage and parking became "long-term," or at least could reasonably be construed as such. As one member of the public explained at the hearing before the ZBA, "It may not be the same trucks, but there are trucks there all the time . . . ." [Omission in original.]

The circuit court denied the appeal, closing its opinion and order by ruling that "NSC could not take advantage of the accessory-use provision, and even if it could, the use of the property for U-Haul rental was expressly barred by the [planning commission's] conditions." NSC now appeals the circuit court's opinion and order.

## II. ANALYSIS

### A. GOVERNING STANDARDS AND PRINCIPLES

In general, this Court reviews de novo a circuit court's decision in an appeal from a zoning board, *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 340; 810 NW2d 621 (2011), as well as the interpretation and application of municipal ordinances, *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008). MCL 125.3606(1) provides:

> Any party aggrieved by a decision of the zoning board of appeals may appeal to the circuit court for the county in which the property is located. The circuit court shall review the record and decision to ensure that the decision meets all of the following requirements:
>
> (a) Complies with the constitution and laws of the state.
>
> (b) Is based upon proper procedure.
>
> (c) Is supported by competent, material, and substantial evidence on the record.
>
> (d) Represents the reasonable exercise of discretion granted by law to the zoning board of appeals.

"Substantial evidence is evidence that a reasonable person would accept as sufficient to support a conclusion." *Edw C Levy*, 293 Mich App at 340 (quotation marks omitted). It may be substantially less than a preponderance of the evidence but requires more than a scintilla of evidence. *Id.* at 340-341. "The court may affirm, reverse, or modify the decision of the zoning board of appeals[,] [and] [t]he court may make other orders as justice requires." MCL 125.3606(4).

In *Hughes v Almena Twp*, 284 Mich App 50, 60; 771 NW2d 453 (2009), this Court observed:

> This Court reviews the circuit court's determination regarding ZBA findings to determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to

the [ZBA]'s factual findings. This standard regarding the substantial evidence test is the same as the familiar "clearly erroneous" standard. A finding is clearly erroneous if the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made. [Quotation marks and citations omitted; alteration in original.]

With respect to the construction of ordinal language, this Court in *Great Lakes Society*, 281 Mich App at 407-408, stated:

> Ordinances are treated as statutes for the purposes of interpretation and review. Hence, the interpretation and application of a municipal ordinance presents a question of law, which this Court reviews de novo. The goal of statutory construction, and thus of construction and interpretation of an ordinance, is to discern and give effect to the intent of the legislative body. Terms used in an ordinance must be given their plain and ordinary meanings . . . . [Citations omitted.]

In general, "a reviewing court is to give deference to a municipality's interpretation of its own ordinance." *Macenas v Village of Michiana*, 433 Mich 380, 398; 446 NW2d 102 (1989). With respect to how much deference should be given, our Supreme Court explained that "in cases of ambiguity in a municipal zoning ordinance, where a construction has been applied over an extended period by the officer or agency charged with its administration, that construction should be accorded great weight in determining the meaning of the ordinance." *Id*. But when the language of an ordinance is clear and unambiguous, it "must be enforced as written." *Kalinoff v Columbus Twp*, 214 Mich App 7, 11; 542 NW2d 276 (1995).

## B. DISCUSSION AND RESOLUTION

For a property owner in a C-1 district to take advantage of the accessory-use provision, the "use" at issue must be "customarily incidental to [a] permitted principal use[][.]" Walker Ordinance, § 94-176(c). The question that arose in this case was whether the operation of an indoor self-storage facility under Walker Ordinance, § 94-176(b)(18) constituted a permitted principal use which would potentially allow for an accessory use. The ZBA, the circuit court, and the city took the position that the indoor self-storage business was merely *similar* to a permitted principal use in the C-1 district and not an actual permitted principal use.[3] We disagree with this stance because it is contrary to the plain and unambiguous language of the ordinance.

---

[3] We note that the ZBA permitted Everkept to operate an indoor self-storage facility under Walker Ordinance, § 94-176(b)(18), and not under the "special exception" use provision in Walker Ordinance, § 94-176(d), which did not become effective until after Everkept was granted permission under Walker Ordinance, § 94-176(b)(18). Accordingly, we will not treat indoor self-storage use as a special-exception use under the particular circumstances of this case. Therefore, we decline to address NSC's argument that a special-exception use for an indoor self-storage operation under Walker Ordinance, § 94-176(d)(5) essentially amounts to a permitted principal use for purposes of seeking an accessory use.

-5-

Walker Ordinance, § 94-176(b), sets forth a list of permitted principal uses, specifically identifying particular businesses or services, with Subdivision (18) as a catchall to cover businesses or services of a similar nature to those expressly identified. The drafters of the ordinance clearly realized the impossibility of identifying every conceivable business or service that would be a proper fit in a C-1 district, resulting in the language in Subdivision (18). The reference in Subdivision (18) to businesses or services that are "similar" to the list of permitted principal uses merely serves as one of the criteria to guide the ZBA in deciding whether Subdivision (18) is applicable to a given use, along with the requirement that a contemplated use be "compatible with the intent of the zoning district." When the ZBA designates a business or service as qualifying for inclusion in a C-1 district under Subdivision (18), it effectively and necessarily becomes a permitted principal use, entitled to the same treatment as the expressly-identified permissible uses, including the potential to operate accessory uses. Accordingly, we hold that the circuit court misinterpreted Walker Ordinance, § 94-176(b), thereby applying incorrect legal principles to the case.

With respect to the site-plan-approval condition precluding any "long-term trailer parking or storage, long-term vehicle parking or storage, or outdoor storage of any material," we note there was evidence that U-Haul trucks and trailers are parked on NSC's property at times and to some extent stored on the property. But the parking or storage must be long-term to violate the site-plan-approval condition. Because the operation of an indoor self-storage facility would necessarily entail customer's employing cars, trucks, and trailers to transport items to and from the facility, the planning commission's condition clearly sought to allow short-term parking and storage of vehicles and trailers. The circuit court ruled that "NSC was doing repeated 'short-term' rental of trucks and trailers in such a way that the storage and parking became 'long-term,' or at least could reasonably be construed as such." We hold that the circuit court misconstrued the plain language of the site-plan-approval condition. In barring long-term trailer or vehicle parking or storage, the planning commission's condition plainly and unambiguously requires a focus on individual vehicles and trailers and whether they are being parked or stored long-term on the property. Repeated short-term rentals are not prohibited by the clear language of the site-plan-approval condition. To interpret the condition otherwise would potentially result in violations any time multiple self-storage customers, *using their own vehicles and trailers*, are at the facility at the same time or one right after the other. To be clear, U-Haul trucks and trailers must be shuttled on and off the property in a timely manner consistent with a customer's use of a self-storage unit. In other words, the U-Haul operation must come close to paralleling or mimicking circumstances in which customers using their own vehicles are typically arriving at, using, and leaving the facility. By way of example, if a customer is finished using a U-Haul truck and leaves it on the property, NSC cannot allow it to sit there because another customer has signed up to use that particular truck two days later. But if the wait between uses by two customers is an hour, the U-Haul truck cannot be characterized as being stored or parked on the property long-term. Where the line is crossed would need to be assessed on a case-by-case basis.[4]

---

[4] Assuming the issue ultimately needs to be addressed, perhaps the parties can even come to an understanding regarding how long a U-Haul truck or trailer can remain on the property in between uses before a violation of the site-plan-approval condition occurs.

***Importantly***, our ruling above is subject to a determination by the circuit court regarding whether operating the U-Haul component of NSC's business is "customarily incidental" to operating the indoor self-storage facility such that the U-Haul aspect of the business qualifies as an "accessory use" under Walker Ordinance, § 94-176(c). The ZBA determined that the U-Haul business is not "customarily incidental" to operating an indoor self-storage business. The circuit court did not address this issue in light of its rulings on the other matters. Therefore, we remand the case to the circuit court for consideration of the issue.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick