**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 15a0437n.06**

**No. 13-1334**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jun 10, 2015
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| SYSTEMATIC RECYCLING LLC, a Michigan limited liability company, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> CITY OF DETROIT; WILLA J. WILLIAMS, <br><br> Defendants-Appellees. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

BEFORE: DAUGHTREY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

In 2006, the City of Detroit awarded Systematic Recycling LLC ("Systematic") a conditional zoning grant that permitted it to operate a large composting facility within city limits, subject to certain conditions. One of the conditions was that Systematic enter into a host community agreement ("HCA") with Detroit to ensure that the city could adequately monitor its composting activities. After Systematic obtained the requisite HCA, it came to light that the individual who had procured the HCA had bribed certain members of the City Council in order to ensure its adoption by the city. Citing the fraud, defendants (collectively, "Detroit") decided to allow the HCA to lapse rather than renewing it. Systematic's conditional land use permit and associated zoning grant was, as a result, revoked.

The core of the dispute in this case is whether Detroit violated Systematic's constitutional rights by failing to renew the HCA and subsequently revoking the permit and zoning grant. The district court concluded that no reasonable jury could find that it did. We agree and affirm.

I.

Early in 2006, Systematic began seeking permission from Detroit to establish and operate a ten-acre composting facility in the city's Delray neighborhood, an industrial area zoned "M4" on the Detroit Zoning Ordinance Map. The property at which the composting facility was to be operated was owned by Alliance Leasing & Rental, LLC—a company associated with James Rosendall. Systematic leased the property from Alliance Leasing & Rental through Rosendall and obtained in April 2006 a conditional land use approval (the "conditional zoning grant" or "conditional land use permit") from Detroit, allowing it to establish and operate a composting facility on the property that it had leased. The conditional zoning grant, however, came with strings attached: it listed twenty-six conditions that, if not fully met, would result in "penalties as provided in the Ordinance, which may include the revocation of this grant." Because the odors from Systematic's composting operations had the potential to cause a nuisance to surrounding properties, Detroit insisted that Systematic enter into an HCA with it, which would give the city a heightened ability to monitor Systematic's operations and ensure compliance with a bevy of requirements tailored to Systematic's circumstances. Thus, the last of the conditions specified in the conditional zoning grant was a requirement that Systematic "enter into a Host Community agreement with [Detroit] prior to operating the site as a Compost Facility."

There was some delay in achieving the requisite HCA. In March 2007, however, the Detroit City Council voted to enter into an HCA with Systematic, under which certain fees would be paid to Detroit by Systematic and Detroit would periodically monitor Systematic's

activities to ensure compliance with local regulations and the terms of the zoning grant. Crucially, the agreement provided that it would continue in effect for only two years, meaning that it would terminate on its own terms if not renewed at the end of March 2009. The HCA also provided that, upon its termination, Systematic "shall have no right to continue to operate the [composting facility]."

In January 2009, shortly before the HCA was up for renewal, Rosendall pled guilty in federal court to conspiring to bribe various public officials in the city of Detroit. In a plea agreement submitted to the court pursuant to Federal Rule of Criminal Procedure 11, Rosendall admitted that part of his felonious conduct had involved the City Council's approval of Systematic's HCA. According to Rosendall's plea agreement, he bribed several city officials in order to secure approval of the HCA and also "caused Systematic Recycling to pay [a public official] over $20,000, in part, to help [Rosendall] obtain later approval of the Community Host Agreement with the Detroit City Council, which was receiving opposition to the facility from local community groups and activists."

On March 2, 2009—a month after Rosendall's guilty plea—Detroit officials sent Systematic a terse note:

> The Host Community Agreement . . . entered into on March 30, 2007 . . . expires March 31, 2009. This letter is to notify [Systematic] that the City shall allow the Agreement to expire.
>
> In accordance with [the terms of the HCA, Systematic] shall commence closure activities no later than April 1, 2009.

According to the Detroit officials who were involved in the non-renewal decision, there was one overriding reason for permitting the HCA to expire: because it had been "obtained through fraud."

On April 2, 2009, Systematic filed suit against Detroit in state court, alleging that Detroit had revoked the conditional zoning grant in violation of its federal due process and equal protection rights. Systematic also requested—and received—a temporary restraining order barring Detroit from taking action to shutter or interfere with Systematic's composting operations on the property in question.

Detroit removed the action to federal district court. As it had in state court, Systematic asked the district court to enter a preliminary injunction enjoining Detroit from interfering with its use of the property; Detroit, by contrast, moved for relief from the state court's temporary restraining order. In February 2010, the district court denied Systematic's motion and granted Detroit's, concluding that there was not a substantial likelihood that Systematic would succeed on the merits of its federal claims. *See Systematic Recycling, LLC v. City of Detroit*, 685 F. Supp. 2d 663, 677 (E.D. Mich. 2010) (*Systematic I*). Systematic appealed the district court's denial of injunctive relief to this court in March 2010.

In the meantime, Detroit began taking steps to finalize the revocation of the permit and zoning grant. Shortly after the district court declined to grant a preliminary injunction, Detroit's Buildings & Safety Engineering Department—which handles zoning matters for the city—gave notice to Systematic that it would hold a hearing for Systematic to show cause why the conditional land use permit and the associated conditional zoning grant should not be revoked due to the termination of the required HCA. After hearing the parties' respective evidence, the hearing officer concluded that revocation of the permit and associated grant was proper. Observing that the zoning grant was conditioned upon the existence of an HCA, the hearing officer found that Detroit had a rational basis to decline to renew the HCA: the fact that it was

procured through payment of a bribe. The hearing officer's decision was adopted by the director of the Buildings & Safety Engineering Department.

Systematic sought review of the hearing officer's decision before Detroit's Board of Zoning Appeals, which held a de novo hearing in April 2011. After considering various evidence and testimony—some of which had been before the hearing officer and some of which had not—the Board denied Systematic's appeal of the revocation of the permit and associated conditional zoning grant. Systematic filed an appeal of the Board's decision in state circuit court.

Meanwhile, an independent legal action was proceeding with regard to the property that housed Systematic's composting operations. Alliance Leasing & Rental—the company that owned the property—went into receivership in 2010 or early 2011. The receiver filed a state-court motion to evict Systematic from the property, and the motion was granted in May 2011, on the basis that Systematic could not produce a valid lease. Systematic filed an interlocutory appeal of the eviction in state court, but the appeal was denied. The property was eventually sold. Systematic was evicted from the property and ceased its operations there.

Given that Systematic no longer had a property interest in the land to which the conditional zoning grant would apply, Detroit moved to dismiss Systematic's pending appeals—one in the state circuit court, and one in this court—as moot. The state court agreed, as did we. Specifically, we observed that, because a conditional land use permit runs with the land and because Systematic no longer had any legal right to occupy the property in question, we were "unable to grant any effective relief" on Systematic's claim for preliminary injunctive relief: even if we ordered Detroit to reinstate the conditional zoning grant, Systematic would not in any

way benefit from its reinstatement. *Systematic Recycling LLC v. City of Detroit*, No. 10-1352, 2011 U.S. App. LEXIS 26610, at *2 (6th Cir. Dec. 13, 2011) (*Systematic II*).

Its claim for preliminary injunctive relief having been mooted by intervening circumstances, Systematic filed an amended complaint for damages in the district court. Count One alleged a 42 U.S.C. § 1983 claim against Detroit under several different theories, including alleged violations of procedural and substantive due process, equal protection, and the First Amendment right to petition. Count Two alleged an unjust enrichment claim against Detroit, theorizing that if the HCA was void ab initio, Detroit should return the fees that Systematic paid to Detroit pursuant to it.

Detroit filed a motion to dismiss or, in the alternative, for summary judgment. The district court granted the motion and entered summary judgment against each of Systematic's claims. *See Systematic Recycling, LLC v. City of Detroit*, No. 09-11430, 2013 WL 425431, at *13 (E.D. Mich. Jan. 24, 2013) (*Systematic III*). Although the district court rejected Detroit's assertion that Systematic's claims were barred by the prior denial of its preliminary injunction claim, the district court nevertheless concluded that each of Systematic's claims failed on the merits. *Id.* at *5–13. The district court subsequently denied Systematic's motion to reconsider.

Systematic timely appealed. Soon afterward, Detroit sought bankruptcy protection, and the appeal was stayed during the pendency of the bankruptcy proceedings. The stay was lifted when the bankruptcy proceedings concluded in mid-2014, and the appeal is now ripe for decision.

## II.

We review the district court's summary judgment determination de novo. *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 526 (6th Cir. 2014). Summary

judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is genuinely in dispute if a reasonable fact-finder could resolve it either way. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the disputed issue of fact is material to liability, therefore, premature entry of summary judgment inappropriately supplants the role of the fact-finder in adjudicating liability. *See id.* at 248–49. Denial of summary judgment where there is no genuine dispute of material fact, on the other hand, improperly permits a claim to go to the fact-finder even though there can be only one possible outcome. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson*, 477 U.S. at 250–52. In determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *Anderson*, 477 U.S. at 251–52, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014).[1]

A.

Systematic first argues that a genuine issue of material fact exists regarding its claim that Detroit denied its constitutional rights to substantive due process and equal protection. Because the conditional zoning grant expressly required an existing HCA, Systematic's claims pivot upon whether Detroit's decision not to renew the HCA was constitutionally suspect. Under either an

---

[1]Detroit initially argues that Systematic's due process claims are barred by the doctrines of law of the case, res judicata, mootness, and standing, while Systematic responds that Detroit failed to preserve such arguments because it failed to note a cross-appeal to the district court's order that rejected them. None of these arguments controls the outcome of this appeal. *See Jennings v. Stephens*, 135 S. Ct. 793, 798 (2015) (explaining cross-appeals); *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (standing); *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (mootness); *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1071 (6th Cir. 2014) (law of the case); *People v. Wilson*, 852 N.W.2d 134, 137 (Mich. 2014) (res judicata).

equal protection or substantive due process theory, the nonrenewal decision would be unconstitutional only if it was either arbitrary or irrational. There is no dispute that Detroit's nonrenewal decision was grounded in reason—the suspected fraud. For this reason, the district court did not err in granting summary judgment in favor of Detroit.

1.

Systematic's theory that Detroit's conduct violated its equal protection rights depends upon the so-called "class-of-one" theory. "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination," so if a plaintiff can demonstrate that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," then the clause has been violated. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601–03 (2008).

The "rational basis" test turns upon the rationality of state action, not upon whether it was wise or effective policy. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 316–17 (1976) (per curiam). "[I]f there is any reasonably conceivable state of facts that could provide a rational basis for" the state's conduct, then the state has not violated the constitution. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Put another way, "courts will not overturn government action 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational.'" *Warren v. City of Athens*, 411 F.3d 697, 710–11 (6th Cir. 2005) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000)). In this circuit, "[a] 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negating every conceivable basis which might support the government action or by

demonstrating that the challenged government action was motivated by animus or ill-will." *Id.* at 711 (internal quotation marks and alteration omitted).

Systematic does not argue that any animus is present on the record. Success on its sole remaining option—"negativing every conceivable basis" for Detroit's conduct—depends upon Systematic's ability to show that the HCA's fraud-riddled history cannot conceivably have led to Detroit's decision not to renew it. *See id.*

We conclude that no reasonable jury could find that Systematic has made such a showing. Systematic stresses that the hearing officer observed that there was no conclusive proof that Systematic itself—as opposed to Rosendall—had participated in the bribery. But beyond the fact that Rosendall in fact said that Systematic played a relatively active role in the bribery scheme—Systematic was assertedly the source of the bribery funds, and Rosendall and the bribed officials purportedly discussed regular payments from Systematic to the officials in question—the hearing officer was correct that proof of Systematic's overt involvement was not necessary to make Detroit's decision not to renew the tainted agreement a rational one: "The fact that a bribe was paid i[s] sufficient. The city officials had a rational basis to allow the Host Community Agreement to expire at the end of the term of two years in order to uphold the integrity of the system that was compromised and insulted by the payment of a bribe." The Board made the same point, observing that the permit had been issued on the basis of "misleading information or misrepresentation." The district court reasoned likewise: "Even if the plaintiff itself was not involved in the bribe, the prospect of corruption undermines the validity of the decision to allow the environmentally sensitive land use in the community." *Systematic I*, 685 F. Supp. 2d at 677. The possibility that Systematic may have been an innocent beneficiary of Rosendall's conduct makes no difference; the point is that there was substantial

reason to believe that the HCA had been fraudulently procured no matter who was ultimately to blame.[2]

No other entity operating under an HCA in Detroit was similarly tainted by allegations that the HCA had been obtained through fraud. Detroit's response to Systematic's circumstances, far from being incomprehensible, is in fact quite explicable. *See Warren*, 411 F.3d at 711. The relevant dissimilarity between Systematic and its putative peers is not a small one, and it gives rise to a rational basis for Detroit's conduct. Even if declining to renew a contract is not the most perfectly tailored response to a suspicion that it had been procured through fraud, it is at least one that has a perceivable conceptual basis. The purpose of a bribe is to distort outcomes and to achieve a result that on a level playing field would not occur. It was perfectly rational—indeed, sensible—for Detroit to believe that a contract that had been procured through the bribery of several of its officials might not have been approved absent the illicit payments, did not adequately reflect the city's best interests, and should not be routinely renewed.

Nor was it irrational for Detroit to revoke the conditional land use grant in the absence of such a contract. The grant was explicitly conditioned upon the existence of the contract. No reasonable jury could conclude that Detroit singled out Systematic from similarly situated peers for no comprehensible reason. *See Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004). Thus, the district court correctly entered summary judgment in favor of Detroit in regard to Systematic's equal protection claim.

---

[2]Systematic attempts to evade the import of Rosendall's statement by arguing that it is inadmissible hearsay. It is not. Rosendall's statement is relevant to Systematic's claim only because it tends to show that Detroit *believed* that Systematic was not similarly situated to its peers; the literal truth of Rosendall's statement is beside the point. *See* Fed. R. Evid. 801(c)(2).

2.

Systematic's substantive due process claim also fails. The Fourteenth Amendment prohibits any State from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The touchstone of due process is protection of the individual against arbitrary action of government." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citation and alteration omitted). Deriving substantive protections from a guarantee of procedural rights is a limited enterprise; notions of substantive due process generally check executive power only where its abuse "shocks the conscience." *Id*. at 846. We have previously expressed the test in a way that overlaps the analysis underlying Systematic's class-of-one equal protection claim: "[T]o sustain a substantive due process claim[ ] in the context of zoning administrative action, a plaintiff must show that the state administrative agency has been guilty of 'arbitrary and capricious action' in the strict sense, meaning that there is no rational basis for the administrative decision." *Brody v. City of Mason*, 250 F.3d 432, 438 (6th Cir. 2001) (citations, alterations, and ellipsis omitted); s*ee also Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008).

This standard makes short work of Systematic's claim. Detroit's decision not to renew the HCA was not unconstitutionally arbitrary; it was predicated upon suspicion that the HCA had been obtained through bribery. And because the existence of an HCA was a predicate for the continued vitality of the conditional land use grant, Detroit did not act capriciously in revoking the special land use permit either. *See also Hussein v. City of Perrysburg*, 617 F.3d 828, 832–33 (6th Cir. 2010) (refusal to allow a homeowner to construct an asphalt driveway did not shock the conscience).

Systematic's attempts at achieving a different result are wholly ineffectual. Although Systematic claims that Detroit had no legal authority to revoke the conditional land use permit, the conditional zoning grant itself provided that it was subject to revocation if its conditions were not met. One of the conditions was an extant HCA;[3] failing to comply with that condition meant that Systematic had failed to comply with the zoning permit; failing to comply with the zoning permit meant that the conditional zoning grant was subject to revocation. *See* Detroit Zoning Ordinance §§ 61-4-38, 61-5-52. Non-renewal of the HCA was a result, moreover, that was expressly contemplated by the terms of the contract itself, which allowed for the possibility that the city would not renew it. It does not "shock the conscience" for Detroit to do something that the contract between the parties had previously contemplated.

B.

Systematic also asserts that Detroit violated its procedural due process rights when revoking the conditional land use grant. "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009) (citation omitted).

The parties do not dispute that a conditional zoning grant and the associated permit is a protectable property interest that implicates the Fourteenth Amendment's Due Process Clause. *Cf. Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202 (6th Cir. 1995) (noting that where

---

[3]Systematic argues that the grant's requirement that Systematic procure an HCA "prior to" operating the site as a compost facility was satisfied when it obtained an HCA at one point in time before commencing operations (leaving it free to discard the agreement at any point thereafter). That interpretation misreads the pertinent language. For purposes of the zoning grant, the term "prior to" denotes a logical precedent, not a merely temporal one.

a zoning application has not been granted, it might not constitute a protectable property interest). "Generally, the process that is due before a property deprivation includes prior notice and an opportunity for a predeprivation hearing." *Warren*, 411 F.3d at 709. "Although the formality and procedural requisites for the hearing can vary, depending upon the importance of the interests at stake and the nature of the subsequent proceedings, the fundamental requirement of procedural due process is that an individual be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Morrison v. Warren*, 375 F.3d 468, 475 (6th Cir. 2004) (internal quotation marks and citations omitted).

Rather than arguing that it lacked adequate notice or opportunity to respond to Detroit's decision not to renew the HCA, Systematic focuses upon the permit revocation proceedings, contending that they failed to provide a "meaningful" opportunity to protect its property interest because they were not impartial. *See Withrow v. Larkin*, 421 U.S. 35, 46 (1975) ("[A] fair trial in a fair tribunal is a basic requirement of due process." (internal quotation marks omitted)). But Systematic is incorrect for several reasons. First, although Systematic claims that the hearing officer was biased by improper ex parte contact from a law clerk employed by Detroit's Law Department, the record establishes that the law clerk in question actually was employed by the hearing officer himself, not by a separate city department.

Second, whether the hearing officer was biased is in large part a red herring. The pertinent Michigan statutes permit a zoning board of appeals to give de novo review to a challenged zoning decision—including, as in this case, the introduction of new evidence that had not been before the initial decisionmaker. *See* Mich. Comp. Laws §§ 125.3601(1), 125.3603(1), 125.3604(1), (2), (6). That is because, as the Michigan courts have explained with respect to the nearly identical precursor statutory regime, the statutes do not prescribe that the hearing before

the zoning board of appeals necessarily be limited to evidence that was before the initial hearing officer: "The Legislature knows the difference between judicial and administrative appellate review. If the Legislature wanted to limit the ZBA's review [to evidence on the] record, it would have done so." *Hughes v. Almena Twp.*, 771 N.W.2d 453, 465 (Mich. Ct. App. 2009) (citation omitted). *Compare* Mich. Comp. Laws § 125.3604(6) (generally permitting a zoning board of appeals to affirm, modify, or reverse a zoning determination) *with* Mich. Comp. Laws § 125.3606(1)–(2) (explicitly outlining the scope of a state circuit court's review of a zoning board of appeals' determination). The Board conducted a de novo hearing at which both parties were permitted to admit new evidence—a situation that was perfectly proper under its own rules of procedure, *see* City of Detroit, Board of Zoning Appeals Rules and Procedures, Art. II & IV, and that Systematic explicitly agreed was "fair." Given the de novo Board hearing, any alleged taint from the hearing officer is mostly beside the point.

Third, even if the administrative proceedings were not conducted in perfect accordance with pertinent state-law procedural requirements, the constitutional question is "whether plaintiffs were afforded the process due to protect their property rights, as opposed to whether the City necessarily conformed to each of the state and city procedural requirements." *Brody*, 250 F.3d at 437. Systematic was entitled to "an opportunity to seek review in the state court" from the adverse administrative ruling. *Id.* at 438. The fact that the administrative proceedings were subject to judicial review suggests that the overall process did not deprive Systematic of a meaningful opportunity to present its case. *Id.* On these facts, no reasonable jury could find that Detroit violated Systematic's procedural due process rights.

C.

Systematic also contends that a reasonable jury could find in its favor on its First Amendment claim. Among the guarantees provided by the First Amendment is "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. This right, rooted in Magna Carta's confirmation of "the right of barons to petition the King," encompasses the ability "to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2494, 2499 (2011); *United States v. Miner*, 774 F.3d 336, 347–48 (6th Cir. 2014).

Although it appeared to have backed a different theory at previous stages in this case, *see Systematic III*, 2013 WL 425431, at *11, Systematic now contends that Detroit retaliated against Systematic after Systematic exercised its First Amendment rights by filing its April 2009 state-court lawsuit seeking to enjoin the revocation of its land use permit. In Systematic's view, Detroit's subsequent revocation of the permit and citation of Systematic for zoning violations would discourage a person of "ordinary firmness" from filing similar lawsuits. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). But even assuming that this is true, Systematic must still demonstrate that its exercise of its First Amendment petition rights was "a motivating factor" for Detroit's subsequent conduct. *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337 (6th Cir. 2010). Systematic has no evidence on the issue of causation, clinging only to a purported admission by Detroit on brief that it had initiated the revocation hearing due to Systematic's state-court assertions that Detroit had revoked the special land use permit without due process. But the statement in question is in reality a relatively mundane assertion that, after Systematic sued Detroit alleging that the non-

renewal of the HCA amounted to a revocation of the zoning permit without due process, Detroit took steps to ensure that Systematic received the due process protections of a full-blown hearing.

As the evidence makes clear, the revocation itself had already been precipitated by Detroit's decision not to renew the HCA—which took place prior to Systematic's exercise of its First Amendment petition rights. No reasonable jury could find that Detroit's attempt to afford Systematic additional due-process protections after Systematic filed suit violated Systematic's right to petition.

### D.

Finally, Systematic argues that the district court erred in entering summary judgment against its unjust-enrichment claim. Systematic's theory is that Detroit was unjustly enriched because it received periodic payments from Systematic under the HCA, even though the HCA was purportedly void ab initio, as having been procured through fraud. There are several reasons why Systematic is incorrect. Most obviously, no court has ever held that the HCA was void. The HCA was enforceable while it was in effect; the fact that it may have been procured through fraud did not necessarily void it but simply gave Detroit another reason not to renew it.

Nor was there any inequitable one-way transfer of value that requires judicial implication of a contract for rectification. *See Fodale v. Waste Mgmt. of Mich., Inc.*, 718 N.W.2d 827, 841 (Mich. Ct. App. 2006) (per curiam). Detroit did not receive money in return for nothing. Systematic received a decided benefit from Detroit in return for its payments: it was allowed to operate its composting facility during the term of the HCA. The parties' reciprocal benefits and obligations were spelled out in an express instrument that delineated the parties' mutual consideration; there is no need for the doctrine of unjust enrichment to fill an inequitable gap

uncontemplated by the parties or created by circumstance. *See id.* The district court properly entered summary judgment against this claim, too.

III.

For these reasons, we affirm the judgment of the district court. All pending motions are denied as moot.