# STATE OF MICHIGAN

# COURT OF APPEALS

NICHOLAS JAMES RUSSIAN,

        Plaintiff-Appellee,

v

SHELLEY PORTER,

        Defendant-Appellant.

UNPUBLISHED
January 18, 2018

No. 339288
Tuscola Circuit Court
Family Division
LC No. 16-029529-DP

Before: TALBOT, C.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right from an order denying her motion to set aside an earlier order granting the parties joint physical and legal custody of their minor child, SJP. We affirm.

Defendant first argues that the trial court's factual findings regarding the best-interest factors were against the great weight of the evidence. In child custody cases, this Court reviews a trial court's findings of fact under the great weight of the evidence standard. *Vodvarka v Grasmeyer*, 259 Mich App 499, 507; 675 NW2d 847 (2003). The trial court's findings "regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction." *Id*. (quotation marks and citations omitted). Questions of law are reviewed for clear legal error. *Id*. at 508 (quotation marks and citations omitted). Finally, this Court reviews a "trial court's discretionary rulings such as custody decisions" for an abuse of discretion. *Id*. at 507-508. " 'An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes.' " *Corporan v Henton*, 282 Mich App 599, 605-606; 766 NW2d 903 (2009) (citation omitted).

Under the Child Custody Act, if there is an established custodial environment, a court may not change that environment "unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c).[1] In general, "a trial court determines the best interests of the child by weighing the twelve statutory factors outlined in MCL 722.23,"

---

[1] The trial court concluded that the established custodial environment was with defendant, a finding neither party challenges on appeal.

*Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). The factors provided in MCL 722.23 are:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

> (f) The moral fitness of the parties involved.

> (g) The mental and physical health of the parties involved.

> (h) The home, school, and community record of the child.

> (i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

> (j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

> (k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

> (*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

The burden of providing clear and convincing evidence lies with the moving party. *Mitchell v Mitchell*, 296 Mich App 513, 520; 823 NW2d 153 (2012).

Regarding factor (a) (love, affection, and other emotional ties), the trial court concluded that the parties were equal, explaining that defendant had "demonstrated her love with hugs,

kisses and cuddling," and that plaintiff had exhibited "hugs, cuddling, kisses, rocking, etc." A trial court may consider a party's influence on the child at issue. *Fletcher v Fletcher*, 229 Mich App 19, 24-25; 581 NW2d 11 (1998). Here, a witness testified that she had observed plaintiff holding and "talk[ing] lovingly" to SJP, and that SJP "lights up" when plaintiff holds him. Plaintiff also testified to feeding, burping, and walking SJP. A witness testified that defendant is a loving and caring mother. However, defendant refused to tell plaintiff that she was in labor, and did not inform plaintiff of SJP's birth until more than a week later. Because both parties demonstrated a bond with SJP, the trial court's determination that this factor favored neither party does not "clearly preponderate[] in the opposite direction." *Vodvarka*, 259 Mich App at 507 (quotation marks and citations omitted).

The trial court found that factor (b) (capacity and disposition of the parties to provide love, affection and guidance) favored neither party because plaintiff "never made it a secret that he desired to be a father," and both parties demonstrated the ability to do things such as help with homework. Plaintiff established that he had parented defendant's children, including VHP, and had worked with her on various educational tasks, such as counting, putting shoes on, and "[g]ood job, thumbs up." Testimony also established that plaintiff provided SJP with affection through patting on the back, rubbing, and swaddling. Plaintiff also stated that he spoke with his sister about taking SJP to church. This indicates that he had the capacity to provide love, affection, and guidance and to educate SJP. Defendant demonstrated her capacity through affection, and by her previous parenting of eight other children. She also explained that she took her children to church. Although one of her older children described her as "super mom," the trial court concluded that he lacked credibility, and "[c]redibility is a matter for the trier of fact to ascertain. This Court will not resolve it anew." *Thames v Thames*, 191 Mich App 299, 311; 477 NW2d 496 (1991). Therefore, the evidence does not "clearly preponderate[] in the opposite direction." *Vodvarka*, 259 Mich App at 507 (quotation marks and citations omitted).

The trial court found that factor (c) (capacity to provide food, clothing, medical care) slightly favored plaintiff. It noted that he made adequate money to provide for SJP's needs as a millwright, and that defendant received limited income as a landlord, and had not successfully secured employment. Continuing, the trial court explained that defendant had been resistant to giving SJP formula, but that SJP was thriving. However, the trial court noted defendant's assertion that SJP could not be away from her for more than two hours because he was nursing, a statement that the court concluded was "not supported by the remaining record, which reflects that the Defendant actually left [SJP] with the Plaintiff for more than two hours" and that the pediatrician did not believe there was any reason that the child could not be away from defendant.

The record reflects that plaintiff made approximately $74,000 as a millwright in 2016. Defendant's "income" consisted of $1,700 per month from renting her previous home, as well as child support. Also, despite defendant's attempts to find employment, she had been unsuccessful. The pediatrician had concerns regarding defendant because defendant had been reluctant to supplement SJP's diet with formula to increase his weight gain. However, she also indicated that SJP had begun gaining weight appropriately. This demonstrates that defendant was able to properly provide for SJP, although it is concerning that she was reluctant to provide formula when advised to do so by the pediatrician. Given plaintiff's income, defendant's limited income, and the concern surrounding defendant's reluctance to provide SJP with formula, the

evidence does not "clearly preponderate[] in the opposite direction," *Vodvarka*, 259 Mich App at 507 (quotation marks and citations omitted), regarding factor (c).

Regarding factor (d) (length of time in a stable, satisfactory environment), the trial court found that the parties were equal because plaintiff lived with his parents, who provided a stable, satisfactory environment, and had been there since SJP's birth, and defendant had lived in the same home since SJP's birth. Plaintiff indicated that he had moved in with his parents after the parties broke up because his uncle was living in his house. Defendant had moved from the home shared by herself and defendant to a new home prior to SJP's birth. Therefore, SJP had enjoyed the same environments his entire life. There was no testimony that either environment was unsatisfactory. Thus, the evidence does not "clearly preponderate[] in the opposite direction." *Vodvarka*, 259 Mich App at 507 (quotation marks and citations omitted).

The trial court found that the parties were equal regarding factor (e) (permanence of the family unit) because plaintiff had good relationships with his parents and extended family, which appeared to be permanent in nature, and SJP would have permanent relationships with defendant's other children and extended family. Although defendant notes that there was no evidence that plaintiff would continue to reside with his parents, his residence is not at issue under this factor, only the "permanence of the family unit." Testimony established that plaintiff came from a close extended family, and that even if plaintiff decided to move out of his parents' home, he intended to live in his own home a mile away. The evidence tends to show that plaintiff's family unit is permanent. Likewise, evidence supports that defendant's family unit, consisting of herself and her other children, was permanent. Therefore, regarding factor (e), the evidence does not "clearly preponderate[] in the opposite direction." *Vodvarka*, 259 Mich App at 507 (quotation marks and citations omitted).

Regarding factor (f) (moral fitness), the trial court concluded that this factor favored plaintiff because, although both parties "perpetrated a fraud when they collectively held [plaintiff] out to be the father of . . . VHP," defendant claimed to have received money as a landlord that, in reality, was "the money that the Plaintiff had provided to the household when the parties were residing together." Additionally, the trial court focused on defendant's contradictory testimony, including testimony regarding abuse, her consideration of an abortion, defendant's alleged failure to contribute to the household when they were living together, and her willingness to share relevant information regarding SJP. It found her credibility low. The court also questioned the credibility of defendant's older children, surmising that defendant may have been lying to them or may have been colluding with them.

The record established that both parties colluded to falsely indicate that plaintiff was VHP's father, and that defendant had claimed money provided to her by plaintiff as income on her tax return. Additionally, defendant indicated that plaintiff had been physically abusive, but later stated that plaintiff never physically restrained her or struck her in the face. The testimony of defendant's 20-year-old son that plaintiff did not help with his car was contradicted by plaintiff's testimony that he did. Additionally, defendant's testimony that plaintiff would go grocery shopping and only purchase food for his own lunches was contradicted by a text message exchanged between the parties in which defendant stated that plaintiff had always done the grocery shopping, and plaintiff's testimony that he bought almost all the groceries. The Supreme Court has explained that "questionable conduct is relevant to factor f only if it is a type

of conduct that necessarily has a significant influence on how one will function *as a parent*." *Fletcher v Fletcher*, 447 Mich 871, 887; 526 NW2d 889 (1994). A non-exhaustive list of "questionable conduct relevant to one's moral fitness as a parent" includes "verbal abuse, drinking problems, driving record, physical or sexual abuse of children, and other illegal or offensive behaviors." *Id*. at 887 n 6. Lying on a birth certificate or on one's taxes does not clearly fall into this type of conduct, although either may be illegal. More likely, lying to one's children or colluding with them during a judicial proceeding would be of the kind contemplated by *Fletcher* because it could indicate how one would function as a parent, i.e., harming a child by encouraging illegal behavior. Therefore, under factor (f), the evidence does not "clearly preponderate[] in the opposite direction." *Vodvarka*, 259 Mich App at 507 (quotation marks and citations omitted).

The trial court concluded that factor (g) (mental and physical health of the parties) favored neither party because both were physically able to care for SJP. It also found that the "pill issue," referring to claims that defendant had left pain medication out while living with defendant, was not relevant to this factor because it "focuses on the mental and physical health of the parties and not about leaving pills out." Evidence was presented that plaintiff suffered from some back pain, but also indicated that he had never had trouble at work due to the medicines he took. No testimony was presented that tended to show plaintiff suffered from any mental health issues, despite defendant's assertion that "one has to question the mental health of an individual who would sign an affidavit of parentage knowing he is not the father of the child . . . ." Therefore, regarding factor (g), the evidence does not "clearly preponderate[] in the opposite direction." Vodvarka, 259 Mich App at 507 (quotation marks and citations omitted).

The trial court stated that defendant "fails miserably" regarding factor (j) (willingness and ability to facilitate relationship with between child and other parent). The trial court noted defendant's failure to inform plaintiff of SJP's early birth, that she told plaintiff about the birth in a text message about VHP's daycare more than a week later, that she moved without notifying plaintiff, that she requested a DNA test knowing plaintiff was the father, and that she withheld contact with SJP until he was a month and a half old. Defendant did not inform plaintiff that she was going to have SJP, and waited 12 days until after his birth to notify plaintiff. Even when defendant did notify plaintiff, she did not do so directly, only mentioning it when she explained that she could not bring VHP to day care because she did not want the baby "exposed in that environment." Further, defendant initially refused to even tell plaintiff SJP's name. Therefore, regarding factor (j), the evidence does not "clearly preponderate[] in the opposite direction." *Vodvarka*, 259 Mich App at 507 (quotation marks and citations omitted).

Finally, the trial court weighed factor (*l*) (any other relevant factor) in favor of plaintiff because defendant sought to keep plaintiff from participating in decisions regarding SJP and to deny him access to SJP's medical records. Additionally, reasoned the trial court, defendant claimed the parties would have a "tug-of-war" regarding SJP but text messages between them did not reveal communication issues. Additionally, the trial court pointed to the fact that defendant witnessed plaintiff parenting her own children, "knew the type of parent that Plaintiff was and had the potential to be[]," yet still sought to eliminate him from SJP's life.

Defendant initially sought full legal custody of SJP, and stated that she had concerns about the parties being able to communicate regarding matters such as health care for SJP. As

stated above, text messages between the parties indicated that they could communicate regarding VHP, even after they had ceased a romantic relationship. Therefore, regarding factor (*l*), the evidence does not "clearly preponderate[] in the opposite direction." *Vodvarka*, 259 Mich App at 507 (quotation marks and citations omitted).

In sum, the trial court's factual findings were not against the great weight of the evidence regarding the best-interest factors. Accordingly, we cannot upset the custody determination.

Next, plaintiff argues that the trial court abused its discretion when it awarded parenting time. MCL 722.27a(1) explains that "[p]arenting time shall be granted in accordance with the best interests of the child." Courts may consider several factors "when determining the frequency, duration, and type of parenting time to be granted":

>(a) The existence of any special circumstances or needs of the child.

>(b) Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.

>(c) The reasonable likelihood of abuse or neglect of the child during parenting time.

>(d) The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.

>(e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.

>(f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.

>(g) Whether a parent has frequently failed to exercise reasonable parenting time.

>(h) The threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal custody. A custodial parent's temporary residence with the child in a domestic violence shelter shall not be construed as evidence of the custodial parent's intent to retain or conceal the child from the other parent.

>(i) Any other relevant factors. [MCL 722.27a(7).]

The trial court ordered that, for now, the parties would have equal parenting time, with alternating weekends from Fridays at 6:00 p.m. to Mondays at 6:00 p.m., one parent having Mondays at 6:00 p.m. to Wednesdays at 6:00 p.m., and the other having Wednesdays at 6:00 p.m. to Friday at 6:00 p.m.

Defendant focuses her argument on factors (a) and (b), stating that the trial court weighed these factors against her despite the fact that SJP was born prematurely, struggled to gain weight,

and she was nursing. Defendant also asserts that the trial court failed to follow the Tuscola County's proposed parenting guidelines. However, the trial court considered each factor under MCL 722.27a(7). In its consideration of factor (a), the trial court stated that "[t]here were no proofs presented to indicate any special needs of SJP. He is a thriving child." Discussing factor (b), the trial court stated that

> [SJP] is 8 months of age. At birth, he was solely a breast-fed child. However, over the course of time, the breast feeding has been supplemented with formula. There have been sufficient medical appointments and over-view regarding the nutrition of the child.

The trial court's analysis demonstrates that it did consider the fact that SJP was born prematurely. Record evidence shows that he was initially underweight, but that once his diet was supplemented with formula, he began to gain weight appropriately. Additionally, the pediatrician testified that babies can switch between breast milk and formula without issue. Also, defendant testified that on December 20, 2016, she asked plaintiff to keep SJP longer, and indicated that plaintiff gave SJP formula. Therefore, the record does not support defendant's assertion that it was in SJP's best interests to spend more time with defendant in order to be breast fed. Accordingly, defendant has not established a basis for reversal on this issue.

Defendant also argues that the trial court abused its discretion when it allowed plaintiff's mother to testify in rebuttal. This Court reviews for an abuse of discretion the decision of a trial court allowing rebuttal evidence. See *Foehr v Republic Auto Parts, Inc*, 212 Mich App 663, 670; 538 NW2d 420 (1995). " 'An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes.' " *Corporan*, 282 Mich App at 605-606 (citation omitted).

Evidence offered in rebuttal "explains, contradicts, or otherwise refutes a defendant's evidence." *Sullivan Indus, Inc v Double Seal Glass Co, Inc*, 192 Mich App 333, 348; 480 NW2d 623 (1991). During rebuttal, a plaintiff may not introduce "new and independent facts competent as part of his testimony in chief unless permitted to do so by the court." *Id*. Rebuttal evidence "must relate to a substantive matter rather than a collateral one," and "contradictory evidence is admissible only when it directly tends to disprove a witness' exact testimony." *Westland v Okopski*, 208 Mich App 66, 72; 527 NW2d 780 (1994). Such evidence may be properly admitted when it "contradicts or negatives evidence offered by the adverse party even though it tends incidentally to show a matter as to which evidence is not usually admissible." *Nolte v Port Huron Area Sch Dist Bd of Ed*, 152 Mich App 637, 645; 394 NW2d 54 (1986).

Defendant presented evidence that she had taken parenting classes and had read various books on parenting. She claimed that "more often than not," plaintiff brings home SJP prior to exercising the full parenting time. Defendant testified that plaintiff gave SJP the wrong formula after being told the correct kind to give him, but that eventually plaintiff began giving the correct formula. Defendant testified that she did not agree with VHP being in day care, and that VHP was only in day care because "[plaintiff] puts her there." Defendant's 20-year-old son testified that, when he was 19, plaintiff left him a refrigerator full of beer. Additionally, he stated that when plaintiff moved in with defendant, he attempted to make "chore charts" for the children, but that it did not work, and that he "tried . . . taking over or helping with putting the kids to bed

—," but only once or twice a week. All of this testimony relates to plaintiff's fitness as a parent, and tends to show that plaintiff would be absent (bringing home SJP without exercising full parenting time and placing VHP in daycare), would exercise poor judgment (giving the wrong formula, providing alcohol to a minor), or would be ineffective as a parent (tried to make chore charts and only sometimes attempted to help put children to bed). Plaintiff's mother testified that she had witnessed plaintiff play with her granddaughter, and that "he's the most patient person you've ever met." She also explained that plaintiff would work with VHP on "numbers, do their ABC's," and "sing a little prayer" at mealtime. This testimony tended to "contradict[] or negative[]," *Nolte*, 152 Mich App at 645, evidence presented by defendant tending to show that plaintiff would be a poor parent.

Defendant stated that she did not have knowledge of plaintiff ever having SJP alone, noting that plaintiff would always have one or more family members with him when he came to pick up SJP. On cross-examination of plaintiff, defendant asked why he did not live in his own home, which sat vacant, and why it was more convenient to live with his parents. Defendant was attempting to show that plaintiff's living situation was unstable because he did not live in his own home and needed the help of family members. His mother testified that plaintiff had his own room and that the home was safe and clean, and that she had a large, close knit family. This tended to "contradict[] or negative[]," Nolte, 152 Mich App at 645, evidence set forth tending to show that plaintiff's living situation was unstable. Therefore, the trial court's decision to allow the rebuttal testimony did not " 'fall[] outside the range of principled outcomes.' " *Corporan*, 282 Mich App at 605-606 (citation omitted), and the trial court did not abuse its discretion.

Finally, defendant argues that it was error to fail to grant her an adjournment during the first portion of the referee hearing on custody, and that she was denied due process. This Court reviews a decision on a motion or adjournment for an abuse of discretion. *Soumis v Soumis*, 218 Mich App 27, 32; 553 NW2d 619 (1996). " 'An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes.' " *Corporan*, 282 Mich App at 605-606 (citation omitted). "A motion for an adjournment must be based on good cause, and a court, in its discretion, may grant an adjournment to promote the cause of justice." *Zerillo v Dyksterhouse*, 191 Mich App 228, 230; 477 NW2d 117 (1991), citing MCR 2.503(D)(1). This Court has stated that cases where denial of a motion for adjournment was proper "have always involved some combination of numerous past continuances, failure of the movant to exercise due diligence, and lack of any injustice to the movant." *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1991).

Here, plaintiff initially filed a complaint in Oakland Circuit Court on September 21, 2016. The Oakland Circuit Court ordered that venue be changed to Tuscola Circuit Court on October 26, 2016. At a hearing held on November 21, 2016, the parties agreed to temporary parenting time, and agreed that a hearing would occur on December 6, 2016. On the first day of the referee hearing, December 6, 2016, defendant appeared without an attorney and explained that she had been "financially [] drained," had attempted to contact attorneys but that they charged between $50 to $80 to speak with them, and that she was unaware she could call witnesses that day. The trial court asked defendant if she was seeking an adjournment, and she answered affirmatively. Plaintiff intended to call five witnesses, and the referee explained that defendant would have the opportunity to question the witnesses and that "[plaintiff] can proceed with his witnesses and then you'll have the opportunity to do your witnesses, okay? And . . . we

most likely will adjourn to a different day, okay?" Additionally, the referee noted that "[a]t the end of the day, we'll see where we're at and if need be, we'll adjourn it to a different day . . . . I'm not making that decision now." The referee also explained to defendant that she could call witnesses back if she wished.

Defendant had a period of nearly six weeks to secure an attorney if she wished, or to prepare for the hearing. Additionally, the referee indicated that an adjournment would likely be granted if the time came for defendant to call witnesses. Because defendant failed to exercise due diligence and did not suffer injustice, *Tisbury*, 194 Mich App at 20, the referee's decision not to adjourn the hearing did not " 'result[] in an outcome falling outside the range of principled outcomes.' " *Corporan*, 282 Mich App at 605-606 (citation omitted). Accordingly, the referee did not abuse her discretion.

Regarding the due process question, "[t]he essentials of procedural due process are adequate notice, an opportunity to be heard, and a fair and impartial tribunal." *Hughes v Almena Twp*, 284 Mich App 50 69; 771 NW2d 453 (2009).

> Due process applies to any adjudication of important rights. It is a flexible concept that calls for procedural protections as the particular situation demands. Due process requires fundamental fairness, which will involve consideration of the private interest at stake, the risk of an erroneous deprivation of such interest through the procedures used, the probable value of additional or substitute procedures, and the state or government interest, including the function involved and the fiscal or administrative burdens imposed by substitute procedures. [*In re HRC*, 286 Mich App 444, 454; 781 NW2d 105 (2009) (quotation marks and citations omitted).]

Here, defendant had been on notice since September 21, 2016, more than two months prior to the December 6, 2016 hearing, that plaintiff was seeking custody of SJP. Additionally, she had notice on October 26, 2016, that she would require an attorney in Tuscola County. Further, the date of the hearing had been set since at least November 21, 2016, more than two weeks prior to the December 6 hearing. Therefore, defendant had ample notice of the hearing. Furthermore, the referee explained that defendant would have the opportunity to recall any witnesses in the continued hearings after December 6. Moreover, the referee stated that she needed to protect defendant's rights. Defendant had "adequate notice, an opportunity to be heard, and a fair and impartial tribunal," *Hughes*, 284 Mich App at 69, and thus, the referee did not abuse her discretion when she declined to adjourn the hearing.

Affirmed.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien